## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY** <br> 2775 Sanders Road <br> Northbrook IL 60062 <br><br> **Plaintiff,** <br> v. <br><br> **DGL GROUP LTD.** <br> 2045 Lincoln Highway, 3rd Floor <br> Edison, NJ 08817 <br><br> **AND** <br><br> **TARGET CORPORATION** <br> c/o CT Corporation System <br> 1515 Market Street, Suite 1210 <br> Philadelphia, PA  19102 <br><br> **AND** <br><br> **DOUBLE GLOBAL INC.** <br> 4319 Santa Ana Street, STE B <br> Ontario, CA 91761 <br><br> **Defendants.** | Civil Action No.:  **2:25-cv-01611** <br><br><br> **JURY TRIAL DEMANDED** |

## <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Plaintiff, Allstate Vehicle & Property Insurance Company, by and through the undersigned counsel, hereby demands judgment against the above-named Defendants, and states by way of Amended Complaint against them as follows:

## <u>PARTIES</u>

1.      Plaintiff, Allstate Vehicle & Property Insurance Company (hereinafter, "Allstate"), was at all times relevant an Illinois corporation with a principal place of business at the address in the caption.

2.      At all times relevant, Allstate was authorized to provide in Pennsylvania the insurance described herein.

3.      At all times relevant, Allstate provided, inter alia, property insurance to its insured Karen Boyle for her property and home ("the subject property") at 121 Ridgefield Road, Newtown Square, Pennsylvania 19073.

4.      Defendant, DGL Group Ltd. (hereinafter, "DGL") is, upon information and belief and was at all times relevant, a business corporation formed under the laws of the State of New York, with a headquarters and principal place of business at the New Jersey address in the caption, and at all times relevant was authorized to do business within the Commonwealth of Pennsylvania. DGL regularly conducts business in Pennsylvania.

5.      At all times relevant, Defendant DGL was in the business of importing, testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the hoverboard and charger at issue in this matter.

6.      Defendant, Target Corporation (hereinafter, "Target") is, upon information and belief and was at all times relevant, a corporation organized under the laws of the State of Minnesota, with a principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota, 55403, with a registered address for service at the Philadelphia address in the caption, and at all times relevant was authorized to do business within the Commonwealth of Pennsylvania. Target regularly conducts business in Pennsylvania.

7.      At all times relevant hereto, Defendant Target was in the business of testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the hoverboard and charger at issue in this case.

8.      Defendant, Double Global Inc (hereinafter, "Double Global") is, upon information

and belief and was at all times relevant, a corporation organized under the laws of the State of California, with a principal place of business at 4319 Santa Ana Street, STE B, Ontario, CA 91761, and at all times relevant was authorized to do business within the Commonwealth of Pennsylvania. Double Global regularly conducts business in Pennsylvania.

9.      At all times relevant hereto, Defendant Double Global was in the business of testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the hoverboard and charger at issue in this case.

10.     Defendants are jointly and severally liable for the damages alleged herein.

## JURISDICTION AND VENUE

11.     Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states.  Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

12.     Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

13.     Plaintiff incorporates by reference the preceding averments as though fully set forth at length herein.

14.     Prior to April 18, 2023, Karen Boyle purchased a subject hoverboard and charger together, for her son Keenan, at a Target store.

15.     At all times material, the subject hoverboard and charger were used in an ordinary, expected, reasonable and foreseeable manner.

16.    At all times material, the subject hoverboard and charger, which were imported, tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce by Defendants, was not modified, changed altered or abused by the Boyles or other users.

17.    Defendant DGL tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce hoverboards and chargers, including the subject hoverboard and charger and their component parts at issue in this case, being intended for use by consumers for the ordinary purpose associated with hoverboards and chargers.

18.    Defendant Double Global tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce hoverboards and chargers, including the subject hoverboard and charger and their component parts at issue in this case, being intended for use by consumers for the ordinary purpose associated with hoverboards and chargers.

19.    Defendant Target tested, inspected, marketed, branded, distributed, sold, and placed into the stream of commerce hoverboards and chargers, including the subject hoverboard and charger at issue in this case.

20.    On April 18, 2023, the subject hoverboard was connected to its charger, and charging in a hallway of the home, when the hoverboard or the charger suddenly and unexpectedly ignited in flames.

21.    This was a relatively small fire, and there were no other components in the area of the fire that could have been ignition points for the fire.

22.    The fire, smoke caused by the fire, and water used to extinguish the fire caused severe damage to the real and personal property of Ms. Boyle.

23.    In addition, Ms. Boyle incurred expenses for temporary living accommodations for her family and the imposition of additional expenses and hardships.

24.     Ms. Boyle sustained total damages in an amount of at least $350,643.33.

25.     Investigation revealed that the fire originated in the subject hoverboard or its charger, which were together at the time of the fire.

26.     The fire was caused by manufacturing and/or design defects within the hoverboard or charger, which caused a dangerous malfunction and fire.

27.     As a direct and proximate result of the aforementioned defects and resulting fire, Karen Boyle suffered damage to her real and personal property, and incurred other expenses, in an amount of at least $350,643.33.

28.     Allstate made payments to its insured in the amount of at least $350,643.33, pursuant to the policy, as a result of the fire, and makes claim against Defendants by way of subrogation.

## COUNT I – STRICT LIABILITY
## PLAINTIFF v. DGL GROUP LTD.

29.     Plaintiff incorporates by reference the preceding averments as though fully set forth at length herein.

30.     At all times material hereto, DGL tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce hoverboards incorporated with rechargeable lithium ion batteries, chargers and other component parts, and specifically tested, inspected, marketed, branded, distributed and placed into the stream of commerce the subject hoverboard and charger at issue in this case.

31.     The subject hoverboard and charger were used in a foreseeable, normal, ordinary and intended manner by the Boyles at all times material hereto.

32.     The subject hoverboard and charger were not modified, changed, altered or abused by the Boyles at any time.

33. The subject hoverboard and charger were in the same, or substantially similar condition, as when they left the possession of DGL.

34. The subject hoverboard and charger were not altered in any manner that caused or contributed to the fire after the products originally left the possession of DGL.

35. DGL knew, or should have known, that the subject hoverboard and charger would, and did, reach users without substantial change in the condition in which they were originally selected and sold.

36. DGL knew and intended that its hoverboards and chargers would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said hoverboards and chargers would be utilized.

37. DGL designed, manufactured, assembled, tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard or charger in a dangerous defective condition, which caused it to catastrophically fail due to a defect and/or malfunction.

38. DGL tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard and charger in a defective condition, unreasonably dangerous to Plaintiffs and their property.

39. At all times material hereto, DGL knew or should have known of the foreseeable risk of fire and related injuries inherent in the design of its hoverboards and chargers.

40. The subject hoverboard and charger did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

41. Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the subject hoverboard and charger safe.

42.    The defects of the hoverboard, charger and their component parts consisted of:

    a.  design defects;
    b.  manufacturing defects;
    c.  instructions for use and warning defects.

43.    The aforementioned defective conditions or material and/or latent defects existed at the time the subject hoverboard and charger left the possession and/or control of DGL.

44.    DGL is strictly liable to Plaintiffs for distributing, selling, placing into the stream of commerce and failing to warn of the dangers of a defective and unreasonably dangerous hoverboard and charger.  The inherent risks associated with the subject hoverboard and charger outweighed the benefits of their use, as safer alternative designs were economically and technologically feasible at the time the products left the control of DGL.

45.    Alternatively, the subject hoverboard and charger "malfunctioned" as that term is used in *Ducko v. Chrysler Motors Co.*, 639 A.2d 1204 (Pa. Super 1994) (*citing Rogers v. Johnson & Johnson Products, Inc.*, 565 A.2d 751, 754 (Pa. 1989)).

46.    As a direct and proximate result of the aforementioned defects and/or defective condition, Karen Boyle sustained and incurred damage to her real and personal property, and incurred other consequential and incidental damages including clean-up costs, repair, and other associated expenses.  Further, the fire damage forced the Boyle family to vacate their property for an extended period of time while their home was restored to their pre-fire conditions.

47.    As a direct and proximate result of the aforementioned defects and the resulting fire, Karen Boyle suffered damage to her real and personal property in the amount of at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, DGL Group Ltd. for compensatory damages in the amount of $350,643.33, exclusive of pre-judgment

interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – NEGLIGENCE
## PLAINTIFF v. DGL GROUP LTD.

48.    Plaintiff incorporates by reference the preceding averments as though fully set forth herein at length.

49.    At all times material hereto, DGL owed a duty to consumers, like Karen Boyle, to use reasonable care in the way it tested, inspected, marketed, branded, distributed and sold hoverboards and chargers, including those involved in this matter.

50.    At all times material hereto, DGL knew or should have known of the foreseeable risk of fire injuries inherent in its hoverboards and chargers, including the subject products.

51.    DGL breached the duty of care it assumed to consumers and was negligent and careless in its testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger in one or more of the following respects:

a.    carelessly and negligently failing to test, inspect, market, sell, distribute and/or place into the stream of commerce a properly functioning and defect-free hoverboard and charger, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

b.    carelessly and negligently failing to properly test, inspect, market, sell, distribute and place into the stream of commerce the subject hoverboard and charger free from defects, capable of functioning in a sale and appropriate manner;

c.    carelessly and negligently failing to properly determine that the subject hoverboard and charger were not in a safe condition, and free of all material defects, capable of functioning in a safe and appropriate manner;

d.    carelessly and negligently testing, inspecting, assembling, marketing, selling, distributing and/or placing into the stream of commerce the subject hoverboard and charger when DGL knew, or should have known, that the products were unsafe and unfit for their intended use;

e.  carelessly and negligently testing, inspecting, assembling, marketing, selling, distributing and/or placing into the stream of commerce the subject hoverboard and charger when DGL knew, or should have known, that the products would be inadequate for the reasons for which they were purchased;

f.  carelessly and negligently testing, inspecting, marketing, selling, distributing and/or placing into the stream of commerce the subject hoverboard and charger that had unreasonably dangerous components that caused the product to catastrophically fail and/or malfunction;

g.  carelessly and negligently testing, inspecting, marketing, selling, distributing and/or placing into the stream of commerce a dangerous and defective hoverboard and charger that DGL knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

h.  carelessly and negligently failing to properly and adequately test, inspect, assemble, market, sell and distribute the subject hoverboard and charger prior to introducing the products into the stream of commerce;

i.  carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the products, which rendered them defective and unreasonably dangerous;

j.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce an unreasonably dangerous and defective hoverboard and charger that DGL knew or reasonably should have known exposed users to an unreasonable risk of harm;

k.  carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject products;

l.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger as they were hazardous and dangerous for their contemplated and intended use;

m.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger, because they failed or malfunctioned in a catastrophic fire condition;

n.  carelessly and testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger because they could ignite under normal and foreseeable operation causing heat and fire to property and person;

o.  carelessly and negligently testing, inspecting, marketing, branding, distributing,

selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery was subject to degradation through self-discharge;

p.   carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery was subject to short circuits;

q.   carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery and/or battery management system was subject to electrical short or circuit failure;

r.   carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery and/or battery management system was subject to thermal runaway;

s.   carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that it could not recognize the weak battery and trigger a shutdown of the hoverboard before thermal runaway could occur;

t.   carelessly and negligently failing to adequately inform and warn purchasers and ultimate users of the subject hoverboard's high propensity for instability to produce heat, ignite, explode and/or cause fires;

u.   carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce products which lacked all necessary safety features to protect users of said products;

v.   carelessly and negligently failing to issue any post-sale modifications or additional warnings in an effort to eliminate the unreasonably dangerous nature of the subject hoverboard and charger; and

w.   carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard with dangerous and hazardous defects in its lithium ion battery, battery management system, battery cells, capacitors, circuit board, electrical wiring and/or connections and/or other components of the hoverboard.

52.   DGL's negligence and carelessness in testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger were the direct and proximate cause of the damages to Ms. Boyle's real and personal property.

53.     As a direct and proximate result of the aforementioned negligent and careless conduct of DGL, Ms. Boyle sustained and incurred damage to her real and personal property, and other consequential and incidental damages including clean-up costs, repair, and other associated expenses.

54.     As a direct and proximate result of the aforementioned negligence and the resulting fire, Karen Boyle suffered damage to her real and personal property in the amount of at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, DGL Group Ltd. for compensatory damages in the amount of at least $350,643.33, exclusive of pre-judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III – BREACH OF EXPRESS WARRANTIES
## PLAINTIFF v. DGL GROUP LTD.

55.     Plaintiff incorporated by reference the preceding averments as though set forth at length herein.

56.     DGL expressly warranted that the subject hoverboard and charger were safe and effective to members of the consuming public, including to Karen Boyle.

57.     More specifically, Defendants expressly warranted that the subject hoverboard and charger were compliant with applicable product safety standards.

58.     DGL breached any and all express warranties made or relating to the subject hoverboard and charger that became part of the basis of the bargain for sale of the hoverboard and charger as described in 13 Pa. C.S.A. § 2-313.  (DGL has better access to said warranties and, therefore, is not prejudiced by their not being attached hereto).

59.     The subject hoverboard and charger do not conform to these express representations

because they were prone to produce heat, ignite and/or explode, causing fire.

60.     Therefore, DGL breached its express warranties to the consuming public, including, but not limited to, the Boyles.

61.     As a direct and proximate result of the aforementioned breaches, Karen Boyle sustained damages to her real and personal property and incurred other expenses in an amount totaling at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, DGL Group Ltd. for compensatory damages in the amount of at least $350,643.33, exclusive of pre-judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT IV – BREACH OF IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY
## PLAINTIFF v. DGL GROUP LTD.

62.     Plaintiffs incorporate by reference the preceding averments as though set forth at length herein.

63.     DGL tested, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard and charger with an implied warranty that they were fit for the particular purpose of operating safely, knowing that consumers would rely on their skill and/or judgment to furnish suitable goods.

64.     At the time of the sale and/or distribution of the subject hoverboard and charger, DGL had reason to know the particular purpose to which the subject hoverboard and charger would be used, and they were being relied upon to furnish a suitable product.  Thus, DGL breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") at 13 Pa. C.S.A. § 2-315 in that the subject products were not fit for the

particular purpose for which such products are required as it was prone to failure and ignition under normal operation.

65.     Members of the consuming public, including Karen Boyle, were the intended beneficiaries of such warranties.

66.     The subject hoverboard and charger were not fit for their particular purpose as a safe means for normal, ordinary and foreseeable use, due to the unreasonable risks of dangers associated with their use.

67.     Karen Boyle reasonably and justifiably relied on DGL's representations that the subject hoverboard and charger were safe to put to normal, ordinary and foreseeable use.

68.     DGL breached the implied warranty of fitness for a particular purpose, which was the direct and proximate cause of Plaintiff's damages.

69.     In addition, DGL breached its implied warranty of merchantability as set out in 13 Pa. C.S.A. § 2-314 (c) in that the subject products were not fit for the ordinary uses for which the subject hoverboard and charger were used.

70.     Plaintiffs' damages as set forth above occurred as a direct and proximate result of the breach by DGL of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa. C.S.A.  § 2-315 and § 2-314 (c).

71.     Plaintiff has met any and all conditions precedent to recovery for such breaches.

72.     As a direct and proximate result of the aforementioned breaches and the resulting fire, Karen Boyle suffered damage to her real and personal property, and incurred additional costs, in an amount totaling at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, DGL Group Ltd. for compensatory damages in the amount of at least $350,643.33, exclusive of pre-

judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT V – STRICT LIABILITY
## PLAINTIFF v. TARGET CORPORATION

73.    Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

74.    At all times material hereto, Target tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce hoverboards incorporated with rechargeable lithium ion batteries, chargers and other component parts, and specifically tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard and charger at issue in this case.

75.    The subject hoverboard and charger were used in a foreseeable, normal, ordinary and intended manner by Karen Boyle or other users at their property at all times material hereto.

76.    The subject hoverboard and charger were not modified, changed, altered or abused by Karen Boyle or others.

77.    The subject hoverboard and charger were in the same, or substantially similar condition, as when the products left the possession of Target.

78.    The subject hoverboard and charger were not altered in any manner that caused or contributed to the fire after the products originally left the possession of Target.

79.    Defendant Target knew, or should have known, that the subject hoverboard and charger would, and did, reach users without substantial change in the condition in which originally selected and sold.

80.    Defendant Target knew and intended that its hoverboards and chargers would be used by members of the general public, and knew of the specific uses, purposes and requirements

for which said hoverboards and chargers would be utilized.

81.    Defendant Target tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard and charger in a dangerous defective condition, which catastrophically failed due to a defect and/or malfunction.

82.    Defendant Target tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard and charger in a defective condition, unreasonably dangerous to consumers and their property.

83.    At all times material hereto, Target knew or should have known of the foreseeable risk of fire and related injuries inherent in the design of its hoverboards and chargers.

84.    The subject hoverboard and/or charger did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

85.    Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the subject hoverboard and charger safe.

86.    The defects of the hoverboard and charger and their component parts consisted of:

    a.  design defects;
    b.  manufacturing defects;
    c.  instructions for use and warning defects.

87.    The aforementioned defective conditions or material and/or latent defects existed at the time the subject hoverboard and charger left the possession and/or control of Target.

88.    Defendant Target is strictly liable to Plaintiff for testing, inspecting, distributing, selling, and placing into the stream of commerce the subject hoverboard and charger, and for failing to warn of the dangers of a defective and unreasonably dangerous hoverboard and charger. The inherent risks associated with the subject products outweighed the benefits of their use, as a safer alternative design was economically and technologically feasible at the time

the products left the control of Target.

89.    For these reasons, Target is strictly liable to Plaintiffs.

90.    Alternatively, the subject hoverboard and charger "malfunctioned" as that term is used in *Ducko v. Chrysler Motors Co*., 639 A.2d 1204 (Pa. Super 1994) (*citing Rogers v. Johnson & Johnson Products, Inc*., 565 A.2d 751, 754 (Pa. 1989)).

91.    As a direct and proximate result of the aforementioned defects and/or defective condition, Karen Boyle sustained and incurred damage to her real and personal property, and caused other consequential and incidental damages including clean-up costs, repair, and other associated expenses.  Further, the fire damage forced the Boyle family to vacate their property for an extended period of time while their home was restored to its pre-fire condition.

92.    As a direct and proximate result of the aforementioned defects and resulting fire, Karen Boyle suffered damage to her real and personal property, and related necessary expenses, in an amount of at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, Target Corporation, for compensatory damages in the amount of at least $350,643.33, exclusive of pre-judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT VI – NEGLIGENCE
## PLAINTIFF v. TARGET CORPORATION

93.    Plaintiffs incorporate by reference the preceding averments as though set forth at length herein.

94.    At all times material hereto, Target owed a duty to consumers, like Karen Boyle, to use reasonable care in the way it tested, inspected, marketed, branded, distributed and sold hoverboards and chargers, including the subject products.

95.     At all times material hereto, Target knew or should have known of the foreseeable risk of fire injuries inherent in its hoverboards and chargers, including the subject products.

96.     Target breached the duty of care it assumed to consumers and was negligent and careless in testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger in one or more of the following respects:

a.  carelessly and negligently failing to test, inspect, market, sell, distribute and/or place into the stream of commerce a properly functioning and defect-free hoverboard and charger, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

b.  carelessly and negligently failing to properly test, inspect, market, sell, distribute and place into the stream of commerce the subject hoverboard and charger free from defects, capable of functioning in a sale and appropriate manner;

c.  carelessly and negligently failing to properly determine that the subject hoverboard and charger were not in a safe condition, and free of all material defects, capable of functioning in a safe and appropriate manner;

d.  carelessly and negligently testing, inspecting, assembling, marketing, selling, distributing and/or placing into the stream of commerce the subject hoverboard and charger when Target knew, or should have known, that the products were unsafe and unfit for their intended use;

e.  carelessly and negligently testing, inspecting, assembling, marketing, selling, distributing and/or placing into the stream of commerce the subject hoverboard and charger when Target knew, or should have known, that the products would be inadequate for the reasons for which they were purchased;

f.  carelessly and negligently testing, inspecting, marketing, selling, distributing and/or placing into the stream of commerce the subject hoverboard and charger that had unreasonably dangerous components that caused the product to catastrophically fail and/or malfunction;

g.  carelessly and negligently testing, inspecting, marketing, selling, distributing and/or placing into the stream of commerce a dangerous and defective hoverboard and charger that Target knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

h.  carelessly and negligently failing to properly and adequately test, inspect, assemble, market, sell and distribute the subject hoverboard and charger prior

to introducing the products into the stream of commerce;

i.  carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the products, which rendered them defective and unreasonably dangerous;

j.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce an unreasonably dangerous and defective hoverboard and charger that Target knew or reasonably should have known exposed users to an unreasonable risk of harm;

k.  carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject products;

l.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger as they were hazardous and dangerous for their contemplated and intended use;

m.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger, because they failed or malfunctioned in a catastrophic fire condition;

n.  carelessly and testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger because they could ignite under normal and foreseeable operation causing heat and fire to property and person;

o.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery was subject to degradation through self-discharge;

p.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery was subject to short circuits;

q.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery and/or battery management system was subject to electrical short or circuit failure;

r.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery and/or battery management system was subject to thermal runaway;

s.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that it could not recognize the weak battery and trigger a shutdown of the hoverboard before thermal runaway could occur;

t.  carelessly and negligently failing to adequately inform and warn purchasers and ultimate users of the subject hoverboard's high propensity for instability to produce heat, ignite, explode and/or cause fires;

u.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce products which lacked all necessary safety features to protect users of said products;

v.  carelessly and negligently failing to issue any post-sale modifications or additional warnings in an effort to eliminate the unreasonably dangerous nature of the subject hoverboard and charger; and

w.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard with dangerous and hazardous defects in its lithium ion battery, battery management system, battery cells, capacitors, circuit board, electrical wiring and/or connections and/or other components of the hoverboard.

97.  Target's negligence and carelessness in testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger were the direct and proximate cause of the damages to Karen Boyle's real and personal property.

98.  As a direct and proximate result of the aforementioned negligent and careless conduct of Target, Karen Boyle sustained and incurred damage to her real and personal property, and incurred other consequential and incidental damages including clean-up costs, repair, and other associated expenses.  Further, as a result of the fire, the Boyle family had to vacate their property for a period of time in order for the property to be restored to its pre-fire condition.

99.  As a direct and proximate result of the aforementioned breaches and the resulting fire, Karen Boyle suffered damage to her real and personal property and other resulting costs in an amount of at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, Target Corporation, for compensatory damages in the amount of at least $350,643.33, exclusive of pre-judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT VII – BREACH OF EXPRESS WARRANTIES
## PLAINTIFF v. TARGET CORPORATION

100.    Plaintiffs incorporate by reference the preceding averments as though set forth at length herein.

101.    Target expressly warranted that the subject hoverboard and charger were safe and effective to members of the consuming public, including to Karen Boyle.

102.    More specifically, Target expressly warranted that the subject hoverboard and charger were compliant with the applicable product safety standards.

103.    Target breached any and all express warranties made or relating to the subject hoverboard and charger that became part of the basis of the bargain for sale of the hoverboard as described in 13 Pa. C.S.A. § 2-313.  (Target has better access to said warranties and, therefore, is not prejudiced by them not being attached hereto).

104.    The subject hoverboard and charger do not conform to these express representations because they were prone to produce heat, ignite and/or explode causing fire.

105.    Therefore, Target breached its express warranties to the consuming public, including, but not limited to, Karen Boyle.

106.    As a direct and proximate result of the aforementioned breaches and the resulting fire, Karen Boyle suffered damage to her real and personal property and other resulting costs in an amount of at least $350,643.33.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant, Target Corporation, for compensatory damages in the amount of at least $350,643.33, exclusive of pre-judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT VIII – BREACH OF IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY
## PLAINTIFF v. TARGET CORPORATION

107.    Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

108.    Target tested, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard and charger with an implied warranty that they were fit for the particular purpose for which they were intended, knowing that consumers would rely on its skill and/or judgment to furnish suitable goods.

109.    At the time of the sale and/or distribution of the subject hoverboard and charger, Target had reason to know the particular purpose to which the subject hoverboard and charger were intended to be used, and Target was relied upon to furnish a suitable product.  Thus, Target breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") at 13 Pa. C.S.A. § 2-315 in that the subject product was not fit for the particular purpose for which such products are required as it was prone to failure and ignition under normal operation.

110.    Members of the consuming public, including consumers such as the Karen Boyle were the intended beneficiaries of the warranty.

111.    The subject hoverboard and charger were not fit for the particular purpose to which the subject hoverboard and charger were intended to be used, due to the unreasonable risks of

dangers associated with their use.

112.    Karen Boyle reasonably and justifiably relied on Target's representations that the subject hoverboard and charger were safe to put to normal, ordinary and foreseeable use.

113.    Target breached the implied warranty of fitness for a particular purpose, which was the direct and proximate cause of Plaintiff's damages.

114.    In addition, Target breached its implied warranty of merchantability as set out in 13 Pa. C.S.A. § 2-314 (c) in that the subject products were not fit for the ordinary uses for which such products are used.

115.    Plaintiff's damages as set forth above occurred as a direct and proximate result of the breach by Target of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa. C.S.A. § 2-315 and § 2-314 (c).

116.    Plaintiff has met any and all conditions precedent to recovery for such breaches.

117.    As a direct and proximate result of the aforementioned breaches and the resulting fire, Karen Boyle suffered damage to her real and personal property and other resulting costs in an amount of at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, Target Corporation, for compensatory damages in the amount of at least $350,643.33, exclusive of pre-judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT IX – STRICT LIABILITY
## PLAINTIFF v. DOUBLE GLOBAL INC

118.    Plaintiff incorporates by reference the preceding averments as though fully set forth at length herein.

119.    At all times material hereto, Double Global tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce hoverboards incorporated with rechargeable lithium ion batteries, chargers and other component parts, and specifically tested, inspected, marketed, branded, distributed and placed into the stream of commerce the subject hoverboard and charger at issue in this case.

120.    The subject hoverboard and charger were used in a foreseeable, normal, ordinary and intended manner by the Boyles at all times material hereto.

121.    The subject hoverboard and charger were not modified, changed, altered or abused by the Boyles at any time.

122.    The subject hoverboard and charger were in the same, or substantially similar condition, as when they left the possession of Double Global.

123.    The subject hoverboard and charger were not altered in any manner that caused or contributed to the fire after the products originally left the possession of Double Global.

124.    Double Global knew, or should have known, that the subject hoverboard and charger would, and did, reach users without substantial change in the condition in which they were originally selected and sold.

125.    Double Global knew and intended that its hoverboards and chargers would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said hoverboards and chargers would be utilized.

126.    Double Global designed, manufactured, assembled, tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard or charger in a dangerous defective condition, which caused it to catastrophically fail due to a defect and/or malfunction.

127.    Double Global tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard and charger in a defective condition, unreasonably dangerous to Plaintiffs and their property.

128.    At all times material hereto, Double Global knew or should have known of the foreseeable risk of fire and related injuries inherent in the design of its hoverboards and chargers.

129.    The subject hoverboard and charger did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

130.    Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the subject hoverboard and charger safe.

131.    The defects of the hoverboard, charger and their component parts consisted of:

   a.   design defects;
   b.   manufacturing defects;
   c.   instructions for use and warning defects.

132.    The aforementioned defective conditions or material and/or latent defects existed at the time the subject hoverboard and charger left the possession and/or control of Double Global.

133.    Double Global is strictly liable to Plaintiffs for distributing, selling, placing into the stream of commerce and failing to warn of the dangers of a defective and unreasonably dangerous hoverboard and charger. The inherent risks associated with the subject hoverboard and charger outweighed the benefits of their use, as safer alternative designs were economically and technologically feasible at the time the products left the control of Double Global.

134.    For these reasons, Double Global is strictly liable to Plaintiff.

135.    Alternatively, the subject hoverboard and charger "malfunctioned" as that term is used in *Ducko v. Chrysler Motors Co.*, 639 A.2d 1204 (Pa. Super 1994) (*citing Rogers v. Johnson & Johnson Products, Inc.*, 565 A.2d 751, 754 (Pa. 1989)).

136.     As a direct and proximate result of the aforementioned defects and/or defective condition, Karen Boyle sustained and incurred damage to her real and personal property, and incurred other consequential and incidental damages including clean-up costs, repair, and other associated expenses.  Further, the fire damage forced the Boyle family to vacate their property for an extended period of time while their home was restored to their pre-fire conditions.

137.     As a direct and proximate result of the aforementioned defects and the resulting fire, Karen Boyle suffered damage to her real and personal property in the amount of at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, Double Global Inc for compensatory damages in the amount of $350,643.33, exclusive of pre-judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT X – NEGLIGENCE
## PLAINTIFF v. DOUBLE GLOBAL INC

138.     Plaintiff incorporates by reference the preceding averments as though fully set forth herein at length.

139.     At all times material hereto, Double Global owed a duty to consumers, like Karen Boyle, to use reasonable care in the way it tested, inspected, marketed, branded, distributed and sold hoverboards and chargers, including those involved in this matter.

140.     At all times material hereto, Double Global knew or should have known of the foreseeable risk of fire injuries inherent in its hoverboards and chargers, including the subject products.

141.     Double Global breached the duty of care it assumed to consumers and was negligent and careless in its testing, inspecting, marketing, branding, distributing, selling and placing into

the stream of commerce the subject hoverboard and charger in one or more of the following respects:

    a.   carelessly and negligently failing to test, inspect, market, sell, distribute and/or place into the stream of commerce a properly functioning and defect-free hoverboard and charger, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

    b.   carelessly and negligently failing to properly test, inspect, market, sell, distribute and place into the stream of commerce the subject hoverboard and charger free from defects, capable of functioning in a sale and appropriate manner;

    c.   carelessly and negligently failing to properly determine that the subject hoverboard and charger were not in a safe condition, and free of all material defects, capable of functioning in a safe and appropriate manner;

    d.   carelessly and negligently testing, inspecting, assembling, marketing, selling, distributing and/or placing into the stream of commerce the subject hoverboard and charger when Double Global knew, or should have known, that the products were unsafe and unfit for their intended use;

    e.   carelessly and negligently testing, inspecting, assembling, marketing, selling, distributing and/or placing into the stream of commerce the subject hoverboard and charger when Double Global knew, or should have known, that the products would be inadequate for the reasons for which they were purchased;

    f.   carelessly and negligently testing, inspecting, marketing, selling, distributing and/or placing into the stream of commerce the subject hoverboard and charger that had unreasonably dangerous components that caused the product to catastrophically fail and/or malfunction;

    g.   carelessly and negligently testing, inspecting, marketing, selling, distributing and/or placing into the stream of commerce a dangerous and defective hoverboard and charger that Double Global knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

    h.   carelessly and negligently failing to properly and adequately test, inspect, assemble, market, sell and distribute the subject hoverboard and charger prior to introducing the products into the stream of commerce;

    i.   carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the products, which rendered them defective and unreasonably dangerous;

j.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce an unreasonably dangerous and defective hoverboard and charger that Double Global knew or reasonably should have known exposed users to an unreasonable risk of harm;

k.  carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject products;

l.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger as they were hazardous and dangerous for their contemplated and intended use;

m.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger, because they failed or malfunctioned in a catastrophic fire condition;

n.  carelessly and testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger because they could ignite under normal and foreseeable operation causing heat and fire to property and person;

o.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery was subject to degradation through self-discharge;

p.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery was subject to short circuits;

q.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery and/or battery management system was subject to electrical short or circuit failure;

r.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that its lithium ion battery and/or battery management system was subject to thermal runaway;

s.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard in a manner that it could not recognize the weak battery and trigger a shutdown of the hoverboard before thermal runaway could occur;

t.  carelessly and negligently failing to adequately inform and warn purchasers and ultimate users of the subject hoverboard's high propensity for instability to produce heat, ignite, explode and/or cause fires;

u.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce products which lacked all necessary safety features to protect users of said products;

v.  carelessly and negligently failing to issue any post-sale modifications or additional warnings in an effort to eliminate the unreasonably dangerous nature of the subject hoverboard and charger; and

w.  carelessly and negligently testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard with dangerous and hazardous defects in its lithium ion battery, battery management system, battery cells, capacitors, circuit board, electrical wiring and/or connections and/or other components of the hoverboard.

142.    Double Global's negligence and carelessness in testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject hoverboard and charger were the direct and proximate cause of the damages to Ms. Boyle's real and personal property.

143.    As a direct and proximate result of the aforementioned negligent and careless conduct of Double Global, Ms. Boyle sustained and incurred damage to her real and personal property, and other consequential and incidental damages including clean-up costs, repair, and other associated expenses.

144.    As a direct and proximate result of the aforementioned negligence and the resulting fire, Karen Boyle suffered damage to her real and personal property in the amount of at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, Double Global Inc for compensatory damages in the amount of at least $350,643.33, exclusive of pre-

judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT XI – BREACH OF EXPRESS WARRANTIES
## PLAINTIFF v. DOUBLE GLOBAL INC

145.    Plaintiff incorporated by reference the preceding averments as though set forth at length herein.

146.    Double Global expressly warranted that the subject hoverboard and charger were safe and effective to members of the consuming public, including to Karen Boyle.

147.    More specifically, Defendants expressly warranted that the subject hoverboard and charger were compliant with applicable product safety standards.

148.    Double Global breached any and all express warranties made or relating to the subject hoverboard and charger that became part of the basis of the bargain for sale of the hoverboard and charger as described in 13 Pa. C.S.A. § 2-313.  (Double Global has better access to said warranties and, therefore, is not prejudiced by their not being attached hereto).

149.    The subject hoverboard and charger do not conform to these express representations because they were prone to produce heat, ignite and/or explode, causing fire.

150.    Therefore, Double Global breached its express warranties to the consuming public, including, but not limited to, the Boyles.

151.    As a direct and proximate result of the aforementioned breaches, Karen Boyle sustained damages to her real and personal property and incurred other expenses in an amount totaling at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, Double Global Inc for compensatory damages in the amount of at least $350,643.33, exclusive of pre-

judgment interest, post-judgment interest and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT XII – BREACH OF IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY PLAINTIFF v. DOUBLE GLOBAL INC

152.    Plaintiffs incorporate by reference the preceding averments as though set forth at length herein.

153.    Double Global tested, marketed, branded, distributed, sold and placed into the stream of commerce the subject hoverboard and charger with an implied warranty that they were fit for the particular purpose of operating safely, knowing that consumers would rely on their skill and/or judgment to furnish suitable goods.

154.    At the time of the sale and/or distribution of the subject hoverboard and charger, Double Global had reason to know the particular purpose to which the subject hoverboard and charger would be used, and they were being relied upon to furnish a suitable product. Thus, Double Global breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") at 13 Pa. C.S.A. § 2-315 in that the subject products were not fit for the particular purpose for which such products are required as it was prone to failure and ignition under normal operation.

155.    Members of the consuming public, including Karen Boyle, were the intended beneficiaries of such warranties.

156.    The subject hoverboard and charger were not fit for their particular purpose as a safe means for normal, ordinary and foreseeable use, due to the unreasonable risks of dangers associated with their use.

157.    Karen Boyle reasonably and justifiably relied on Double Global's representations

that the subject hoverboard and charger were safe to put to normal, ordinary and foreseeable use.

158.    Double Global breached the implied warranty of fitness for a particular purpose, which was the direct and proximate cause of Plaintiff's damages.

159.    In addition, Double Global breached its implied warranty of merchantability as set out in 13 Pa. C.S.A. § 2-314 (c) in that the subject products were not fit for the ordinary uses for which the subject hoverboard and charger were used.

160.    Plaintiffs' damages as set forth above occurred as a direct and proximate result of the breach by Double Global of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa. C.S.A. § 2-315 and § 2-314 (c).

161.    Plaintiff has met any and all conditions precedent to recovery for such breaches.

162.    As a direct and proximate result of the aforementioned breaches and the resulting fire, Karen Boyle suffered damage to her real and personal property, and incurred additional costs, in an amount totaling at least $350,643.33.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, Double

Global Inc for compensatory damages in the amount of at least $350,643.33, exclusive of pre-

judgment interest, post-judgment interest and for such other relief as this Honorable Court shall

deem appropriate under the circumstances.

**de LUCA LEVINE LLC**

BY:_____

**STEVEN J. PAYNE**
PA ID: 90816
301 E. Germantown Pike, 3rd Floor,
East Norriton, PA 19401
215-383-0081
215-383-0082 (fax)
spayne@delucalevine.com
**ATTORNEYS FOR**

**Date:** April 18, 2025